UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| KEVIN B. DEAN,  )<br>　　Debtor-Appellant,　  )<br>　  )<br>v.　  )　2:21-cv-00150-LEW<br>　  )<br>EMILE CLAVET,　  )<br>　　Creditor-Appellee.　  )  | |

### MEMORANDUM OF DECISION ON BANKRUPTCY APPEAL

Kevin B. Dean, Debtor-Appellant, appeals the May 7, 2021, Summary Judgment order issued by the United States Bankruptcy Court for the District of Maine (Fagone, B.J.). In his order, Judge Fagone entered summary judgment for Clavet, Creditor-Appellee, determining that Dean's debt to Clavet was non-dischargeable as a matter of law. I affirm.

### BACKGROUND

**1. The Underlying Business Dispute**

Dean and Clavet were friends and business partners who co-owned a number of businesses together. One of these businesses, a marina located in Texas, Dean and Clavet owned via two limited liability companies in which they shared equal ownership: Blue Water, LLC, organized under Maine law, and Covered Marina, LLC, organized under Texas law.

Dean, who managed the marina, received an offer from a third party, TCRG Opportunity X LLC, to purchase the marina for $7.5 million. Without fully apprising Clavet of this offer, Dean agreed with Clavet to purchase the latter's membership interest

in both LLCs. To determine a sale price for the membership interests, Dean and Clavet valued the marina at $2.5 million, less certain business expenses. But shortly after purchasing Clavet's interest in the LLCs, Dean sold the marina for $7.5 million. Dean did not inform Clavet of the sale until several months later, when he was forced to tell Clavet that they had both been named in a lawsuit brought by TCRG regarding the sale of the marina.

Clavet sued Dean, and the Maine and Consumer Business Court (the "Business Court") entered judgment for Clavet, finding that Dean was liable for fraudulent misrepresentation and had breached his fiduciary duty to Clavet. *See Clavet v. Dean*, No. BCD-CV-2018-04 (Me. B.C.D. Jan. 8, 2020). The court determined that "Dean was a fiduciary to" Clavet and Blue Water, LLC,[1] that he "intentionally omitted material information which he had a duty" to disclose to Clavet, and that he did so "for the purpose of inducing" Clavet to sell his membership interest for less than its apparent worth. *Id.* at *4–6 (quotations omitted). The court determined that Dean's fraudulent misrepresentation had caused Clavet losses of $2,516,181.53 and awarded damages in that amount. *Id.* at *12–13. The court further found that Dean's scornful attitude toward Clavet and "brazen" scheme to defraud him indicated "actual malice" toward Clavet, and so awarded additional punitive damages of $750,000. *Id.* *14–15. On appeal, the Law Court affirmed, finding that Dean "owed Clavet a fiduciary duty to disclose his negotiations for the sale of the

---

[1] The court did not address whether Dean had breached any fiduciary duties to Clavet with respect to Covered Marina, LLC, as it found Texas law to be unclear as to whether co-owners of an LLC owe fiduciary duties to one another. *Clavet*, at *5 n.3. However, the court found the sale of Covered Marina, LLC, to be relevant for calculating damages insofar as any breach of fiduciary duty with respect to Blue Water, LLC, "caused Mr. Clavet to relinquish his interests in both LLC's." *Id.*

2

company to a third party" and that "Dean breached that duty." *Clavet v. Dean*, Mem-20-75 (Oct. 13, 2020).

### 2. Dean's Bankruptcy and This Case

Later that year, Dean filed for bankruptcy and requested that the bankruptcy court declare his debt under the state court judgment to be dischargeable under federal bankruptcy law. Dean specifically argued that the debt fell outside the scope of 11 U.S.C. § 523(a)(2) and § 523(a)(4), which exempt from discharge debts for money obtained by false representations or fraud, though he made clear that his request for a declaratory judgment as to the debt's dischargeability was not limited to § 523(a)(2) and § 523(a)(4). The bankruptcy court, on its own initiative, asked the parties to brief the issue of whether the debt was dischargeable under § 523(a)(6), which exempts from discharge debts "for willful and malicious injury by the debtor." 11 U.S.C. § 523(a)(6). After permitting the parties to fully brief the issue and determining that there was no dispute of material fact, the court entered summary judgment, concluding that Dean's debt to Clavet was non-dischargeable as a matter of law under § 523(a)(6). The court applied the doctrine of issue preclusion and noted that, as the state court judgment in *Clavet v. Dean* established all of the elements necessary to render a debt non-dischargeable under § 523(a)(6), Dean was precluded from relitigating the issue in federal bankruptcy court.

Dean appealed the bankruptcy court's decision, arguing that the court's award of summary judgment was both procedurally and substantively incorrect.[2] On Clavet's

---

[2] There is some confusion between the parties as to whether Dean challenges on appeal Judge Fagone's decision to grant, on his own initiative, summary judgment as to whether the debt was dischargeable under § 523(a)(6). As Dean avers that he "does not dispute the Bankruptcy Court's invocation of" Rule 56(f),

3

request, and pursuant to Fed. R. Bankr. P. 8005(a) and 1st Cir. BAP.L.R. 8005-1(b)(2), the case was transferred to this court.

## DISCUSSION

This court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C.A. § 158(a)(1). Any "order which disposes of a discrete dispute within a larger [bankruptcy] case will be considered final and appealable," *In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir. 1985) (citation omitted), including a "bankruptcy court's order determining the dischargeability of a debt," *O'Sullivan*, 630 B.R. 679, 687 (B.A.P. 1st Cir. 2021) (citation omitted).

I review the bankruptcy court's legal conclusions *de novo*, and its factual findings for clear error. *Wheeling & Lake Erie Ry. Co. v. Keach*, 606 B.R. 1, 5 (D. Me. 2019), *aff'd sub nom. In re Montreal, Maine & Atl. Ry., Ltd.*, 956 F.3d 1 (1st Cir. 2020). The issuance of summary judgment is a legal conclusion subject to *de novo* review. *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 17 (1st Cir. 2018).

1.  **Dean's Substantive Argument Against Summary Judgment**

First, I agree with the bankruptcy court's conclusion that Dean's debt to Clavet was non-dischargeable under § 523(a)(6) as a matter of law. Section 523(a)(6) of the Bankruptcy Code prevents a debtor from discharging debts "for willful and malicious

---

Appellant's Reply 9 (ECF No. 7), I do not address the issue in full here. In any event, Judge Fagone's grant of summary judgment was proper. Federal Rule of Civil Procedure 56(f) permits a judge to "grant summary judgment for a nonmovant [or] on grounds not raised by a party," Fed. R. Civ. P. 56(f), so long as "discovery is sufficiently advanced" and the court affords the parties "appropriate notice and a chance to present" evidence, *Berkovitz v. Home Box Office, Inc.*, 89 F.3d 24, 29 (1st Cir. 1996). Here, Dean was afforded an opportunity to object to the grant of summary judgment in writing, and, having moved for summary judgment himself, evidently believed that discovery was sufficiently advanced.

injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). As the Supreme Court recognized, this "formulation triggers in the lawyer's mind the category [of] 'intentional torts,'" *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Courts have interpreted § 523(a)(6) as creating a two-prong test for non-dischargeability, with a "willfulness" prong and a "malice" prong, each of which must be satisfied for a debt to be exempt from discharge. *See In re Levasseur*, 737 F.3d 814, 818 (1st Cir. 2013).[3]

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the [prevailing party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A material fact is one that has the potential to determine the outcome of the litigation. *Id.* at 248; *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). To raise a genuine issue of material fact, the party opposing the summary judgment motion must demonstrate that the record contains evidence that would permit the finder of fact to resolve a material issue in his favor. *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999). Though case law generally speaks in terms of the moving and non-moving parties, where, as here, the court grants summary judgment to a non-moving party on its own initiative, it must view the evidence in the light

---

[3] Dean also argues that the state court judgment fails to establish the threshold showing that a debt must arise out of an "injury," or a "violation of another's legal right, for which the law provides a remedy." *Tacason*, 537 B.R. 41, 50 (1st Cir. B.A.P. 2015) (citing *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir.2013)). But this argument is unpersuasive—the Business Court plainly found that Dean defrauded, and breached his fiduciary duty to, Clavet, and that Clavet suffered economic loss as a result.

most favorable to the original movant—here, Dean. *See Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014).

The bankruptcy court found that the Business Court's decision in *Clavet v. Dean* established both the willfulness and malice prongs of § 523(a)(6) and thus precluded Dean from litigating (or relitigating, as it were) those issues in bankruptcy court. A "judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered." *In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 56 (1st Cir. 2007) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Thus, Maine law determines the preclusive effect of the Business Court's judgment. In Maine, the doctrine of issue preclusion "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding."[4] *Doane v. Dep't of Health & Hum. Servs.*, 250 A.3d 1101, 1111 (Me. 2021) (quotation omitted). Here, there is no doubt that the state court judgment in *Clavet v. Dean* was a final judgement, nor that Dean had the opportunity and incentive to fully litigate the issues. Dean only argues that the non-dischargeability determination under § 523(a)(6) raises different issues than those raised in the state court proceeding.

### A. Willful

---

[4] Maine law recognizes two species of preclusion: "collateral estoppel, also known as issue preclusion, and claim preclusion." *Kurtz & Perry, P.A. v. Emerson*, 8 A.3d 677, 681 (Me. 2010) (citing *Macomber v. MacQuinn–Tweedie*, 834 A.2d 131, 138 (Me. 2003). Only issue preclusion applies here. Claim preclusion, a narrow doctrine that prevents the relitigation of legal theories that were or should have been raised in a prior action, does not apply to dischargeability issues, as dischargeability is "unique to bankruptcy" and so will never raise identical legal theories as a state law cause of action. *In re Slosberg*, 225 B.R. 9, 13 n.3 (Bankr. D. Me. 1998).

I agree with the bankruptcy court that the Business Court's factual findings in *Clavet v. Dean* are identical to the facts needed to establish willfulness, and so are sufficient to preclude Dean from relitigating that prong. For an injury to be willful, a debtor must "inten[d] to do an act which [he] is substantially certain will lead to the injury in question," though he need not "inten[d] to injure." *In re Stewart*, 948 F.3d 509, 528 (1st Cir. 2020) (quoting *In re Levasseur*, 737 F.3d at 818). The Business Court concluded that Dean "intentionally" shielded material information from Clavet "for the purpose of inducing" Clavet to sell his membership interests in the LLCs for less than they were worth once the sale of the marina went through. *Clavet*, at *4–6. This finding makes clear that Dean was not only aware that his actions were substantially certain to cause Clavet to lose money, but actually intended to bring about that result. Dean's injury to Clavet was willful.

### B. Malicious

I also agree with the bankruptcy court's determination that the Business Court's finding that Dean acted with actual malice toward Clavet precludes him from relitigating the malice issue. The First Circuit has defined "malicious" to mean an injury that is "wrongful and without just cause or excuse" and "committed in 'conscious disregard of one's duties.'" *In re Levasseur*, 737 F.3d at 818 (quoting *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir.1997)). Courts look to whether a debtor was "*aware* that the act was wrongful," *In re Neronha*, 344 B.R. 229, 232 (Bankr. D. Mass. 2006) (emphasis in original), but actual knowledge of the law is not essential to a finding of malice, *id.* at 234 n.8.

Dean argues that, because the Business Court never found that he consciously disregarded any legal duty to Clavet, that court's judgment did not address the same issue as a § 523(a)(6) malice determination and so does not preclude him from litigating the issue in this proceeding. At bottom, Dean's argument raises the question of whether the First Circuit's definition of implied malice sets the exclusive standard for establishing malice under § 523(a)(6), such that even a finding of actual malice on the part of a debtor is insufficient.[5] I conclude that a finding of actual malice suffices.

First Circuit precedent for the malice standard is best read as an articulation of when, absent a showing of actual ill will, a court will imply malice for the purpose of § 523(a)(6)—an attempt to broaden, rather than narrow, the scope of non-dischargeability. When the First Circuit first adopted an "implied or constructive" malice standard for non-dischargeability in *Printy*, the court made clear that its aim was to define malice capaciously such that a showing of "specific intent to harm is not *necessary*." *Printy*, 110 F.3d at 858 (emphasis added); *see also id.* at 859 (malice "means an act done in conscious disregard of one's duties . . [n]o special malice toward the creditor *need* be shown.") (emphasis added). I know of no case in which the First Circuit—or any other court, for that matter—has suggested that a showing of actual malice is ever *insufficient* under § 523(a)(6). To the contrary, courts of appeals have generally adopted an implied malice standard so as to ensure that § 523(a)(6) applies to more debts than would be

---

[5] The law recognizes two species of malice. Actual (or special) malice—which the Business Court found in this case—refers to conduct "motivated by ill will toward the plaintiff." *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985). Implied malice refers to conduct that "is so outrageous" as to suggest an utter disregard for others. *Id.*

8

non-dischargeable under a narrower actual malice standard. *See In re Miller*, 156 F.3d 598, 605 (5th Cir. 1998).

What's more, precedents make clear that an award of punitive damages suffices to establish malice for the purpose of § 523(a)(6), even where the judgment does not involve a finding that the debtor consciously disregarded any duties. Though the First Circuit has not addressed the issue, courts in this circuit have repeatedly recognized that "punitive damages are indicative of willful and malicious injury which preclude discharge of the debt," and so have estopped debtors from litigating the non-dischargeability of debts under § 523(a)(6). *In re Smith*, 270 B.R. 544, 550 (Bankr. D. Mass. 2001) (quotation omitted). *See also In re Benham*, No. 07-40498, 2008 WL 397668, at *4 (Bankr. D. Mass. Feb. 11, 2008) ("The jury's award of punitive damages, therefore, suffices for a finding of malice."); *In re Brier*, 274 B.R. 37, 45–46 (Bankr. D. Mass. 2002). *Cf. In re Mater*, 335 B.R. 264, 268 (Bankr. D.N.H. 2005) (citing lack of punitive damages as evidence that state court judgment did not establish malice under § 523(a)(6)). Other circuits to have addressed the question have held that an award of punitive damages based on actual malice satisfies § 523(a)(6)'s malice prong. *See In re Delannoy*, 852 F. App'x 279, 282 (9th Cir. 2021); *Roussel v. Clear Sky Properties, LLC*, 829 F.3d 1043, 1047 (8th Cir. 2016); *In re Best*, 109 F. App'x 1, 7 (6th Cir. 2004) (noting, in dicta, that an award of punitive damages "besp[eaks] malice on the part of the debtor").

Where courts in other circuits have found punitive damages awards insufficient to establish malice, they have done so only where the state law makes it possible for the punitive damages in question to have been awarded based on a finding of mere

recklessness. *See In re McCabe*, 856 F. App'x 430, 431 (3d Cir. 2021); *Hedger v. Kramer*, 726 F. App'x 677, 683 n.1 (10th Cir. 2018); *In re Duncan*, 448 F.3d 725, 730 (4th Cir. 2006). But because Maine law makes punitive damages unavailable for merely reckless conduct, any award of punitive damages necessarily involves a finding that the defendant intended to cause harm or actually knew that his actions would cause harm. *See Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985).

Indeed, in *Reynolds-Marshall v. Hallum*, 162 B.R. 51 (D. Me. 1993), this court determined that an award of punitive damages under Maine law satisfied the malice element of § 523(a)(6) and thereby estopped the debtor from relitigating that issue in bankruptcy court. *Id.* at 56. Because Maine law limits punitive damages to instances in which the defendant's "conduct is motived by ill will toward the plaintiff" or "is so outrageous" as to make clear that plaintiff knew that his conduct would harm the plaintiff, *Tuttle*, 494 A.2d at 1361, an award of punitive damages in Maine necessarily involves a finding that the Plaintiff was at least aware that his conduct was without just cause or excuse, *see Reynolds-Marshall*, 162 B.R. at 56.

Doctrinal shifts since *Reynolds-Marshall* have not undermined its holding. In *In re Slosberg*, 225 B.R. 9 (Bankr. D. Me. 1998), the bankruptcy court wrote that the Supreme Court's 1998 decision in *Geiger*, which narrowed the scope of § 523(a)(6)'s willfulness prong to require an actual intent to injure, called into question whether an award of punitive damages necessarily satisfies § 523(a)(6)'s malice prong. *See id.* at 23 n.23. But as other courts in this circuit have noted, the First Circuit continues to apply its pre-*Geiger* construction of § 523(a)(6)'s malice prong. *See In re Levasseur*, 737 F.3d at 818 (quoting

10

*Printy*, 110 F.3d at 859). *See also In re Ovalles*, 619 B.R. 23 at 31 (Bankr. D.P.R. 2020) (noting continued vitality of pre-*Geiger* precedent). Thus, to the extent that, under First Circuit law, a state court award of punitive damages precluded a debtor from litigating malice before *Geiger*, it has the same preclusive effect after *Geiger*. This is especially true where punitive damages are awarded based on a finding of actual malice, which the *Slosberg* court acknowledged was sufficient to establish § 523(a)(6)'s malice element under both *Geiger* and First Circuit precedent. *See* 225 B.R. at 21.

Accordingly, the Business Court's award of punitive damages and attendant finding that Dean acted with "actual malice," *Clavet*, at *14–16, was sufficient to establish malice under § 523(a)(6) and thus to preclude Dean from relitigating that issue in bankruptcy court.

### C. Whether the entire debt is non-dischargeable

I agree with the bankruptcy court that Dean's entire debt to Clavet is exempt from discharge. Section 523(a)(6) prohibits "the discharge of *any* liability arising from a debtor's" willful and malicious injuries to the creditor. *Cohen v. De La Cruz*, 523 U.S. 213, 221 (1998) (emphasis added) (construing identical language in § 523(a)(2)(A)). Thus, where a lawsuit arises "solely out of" willful and malicious conduct, the entire judgment is non-dischargeable. *Pettey v. Belanger ex rel. Belanger*, 232 B.R. 543, 548 (D. Mass. 1999). Dean's debt to Clavet meets this standard.

There is no need to distinguish between Clavet's losses with respect to Blue Water, LLC, and his losses with respect to Covered Marina, LLC. The Business Court based its compensatory damages award on a finding that Dean was liable for fraudulent

misrepresentation claim, which claim applied to both LLCs, *Clavet*, at *12—not its finding that Dean had breached his fiduciary duty, which applied only to the Maine-based Blue Water, LLC. *Id.* at *5 n.3. And even if the damages award *were* based on the finding that Dean breached his fiduciary duty with respect to Blue Water, LLC, the court made clear that Clavet's losses from selling Covered Marina, LLC, resulted from, and hence were attributable to, that breach. *Id.* The doctrine of issue preclusion prevents Dean from relitigating the Business Court's determination of causation in this federal bankruptcy proceeding.

The bankruptcy court was also correct not to apportion Dean's debt between the fraudulent misrepresentation and breach of fiduciary duty claims. A bankruptcy court must separate dischargeable and non-dischargeable portions of a judgment where "[n]ot all of the [underlying] conduct . . . necessarily meets the federal standard of nondischargeability." *Spagnuolo v. Brooke-Petit*, 506 B.R. 1, 7–8 (D. Mass. 2014). But the Business Court's reasoning makes clear that both the fraudulent misrepresentation claim and the breach of fiduciary duty claim—and hence the entire amount of damages—arose out of the same underlying willful and malicious conduct. The whole debt is therefore exempt from discharge.

### 2. Dean's Procedural Argument Against Summary Judgment

Because Dean was precluded from litigating the issues of willfulness and malice in bankruptcy court, the bankruptcy court was not permitted—much less required—to look beyond the four corners of the state court judgment. To treat the state court judgment as anything less than dispositive on the question of dischargeability would ignore that hoary

principle of law that valid final judgments, including those issued by courts in other jurisdictions, are "conclusive upon all matters and issues which were in fact there tried and decided." *Corey v. Indep. Ice Co.*, 76 A. 930, 934 (Me. 1910); *see also Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 439 (1943) (Full Faith and Credit Clause requires that "a litigation once pursued to judgment shall be . . . conclusive of the rights of the parties in every other court."). While a court may sometimes look beyond the four corners of a judgment to determine whether an issue was actually litigated in a prior proceeding, it may not pull back the veil to question the findings of an otherwise valid and final judgment. Here, the bankruptcy court correctly refused to entertain evidence of Dean's state of mind when the Business Court's finding of actual malice plainly established Dean's malice for the purpose of § 523(a)(6).

As the state court judgment thus established that Dean's debt to Clavet was non-dischargeable as a matter of law, there simply were no other material facts at issue, and the bankruptcy court's issuance of summary judgment was proper.

## CONCLUSION

The bankruptcy court's order granting summary judgment is AFFIRMED.

**SO ORDERED.**

Dated this 7th day of December, 2021.

                                        /s/ Lance E. Walker
                                    UNITED STATES DISTRICT JUDGE